IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| STATE OF NEW MEXICO, *ex rel.* HECTOR H. BALDERAS, Attorney General<br><br>    Plaintiff,<br><br>   vs.<br><br>PREFERRED CARE, INC., *et al.*<br><br>   and<br><br>CATHEDRAL ROCK CORPORATION, *et al.*<br><br>    Defendants. | No. 15-CV-0396-MV-SMV |

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff State of New Mexico's Motion to Remand and for Costs and Memorandum in Support [Doc. 60]. Defendants timely responded [Docs. 73, 74] and Plaintiff replied [Doc.75]. The Court, having considered the Motion, briefs, relevant law, and being otherwise fully informed, finds that the Motion is well-taken in part and therefore will be **GRANTED IN PART.**

## BACKGROUND

### I. Factual Background

For reasons that will become readily apparent below, a relatively sparse recitation of the factual background in this case will suffice for the purposes of resolving the instant dispute. Stated succinctly, the numerous Defendants are seven New Mexico nursing homes, their management companies, and their parent

1

companies.  *See, e.g.*, Doc. 60 at 2.  New Mexico, through its Attorney General, alleges that Defendants, in the course of operating these facilities, misrepresented to consumers, private insurers, and the state the quality and nature of care provided.  *See id.*  By way of example, Plaintiff alleges that the nursing homes frequently ignored residents, "left [them] in their own waste for long periods," and responded to residents' calls for assistance in an unacceptably dilatory fashion.  Doc. 1-2 ¶ 68.  New Mexico continues that, these appalling omissions in care notwithstanding, Defendants persisted in submitting claims for payment to the state for services that were not provided, failed to comply with applicable regulations, or failed to meet the relevant standard of care.  *See id.* ¶¶ 70-71.

II.     **Procedural History**

Predicated on the allegations described above, the Attorney General of New Mexico initiated a civil action against the Defendants in New Mexico's First Judicial District Court, County of Santa Fe.  *See* Doc. 1-2 at 1.  In its Amended Complaint, filed April 1, 2015, Plaintiff contends that Defendants' conduct renders them liable under the New Mexico Fraud Against Taxpayers Act, the New Mexico Medicaid Fraud Act, the New Mexico Unfair Practices Act, and the common law of New Mexico.  *See* Doc. 1-3 at 128-133.  One week later, on April 8, 2015, Plaintiff perfected service on the first of the Defendants.  *See* Doc. 1 ¶ 2.  Defendant Preferred Care Partners Management Group LP, with the consent of its co-Defendants, timely removed the instant action to this Court on May 8, 2015.  *See* Doc. 1 ¶ 1-3.  *See also* 28 U.S.C. § 1446(b) ("notice of removal of a civil action or

proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading."). Plaintiff now moves this Court to remand the entire suit to the First Judicial District Court of New Mexico and impose an award of attorneys' fees and costs for the litigation associated with removal, arguing that the case patently does not present a federal question.

## DISCUSSION

**I. State Court Removal and Federal Question Jurisdiction**

It is a foundational premise of American federalism that "[f]ederal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (internal quotation marks omitted). Accordingly, the statutory right to remove cases over which the district courts have original jurisdiction must be construed in concert with the "presumption against removal jurisdiction, which the defendant seeking removal must overcome." *Ullman v. Safeway Ins. Co.*, 995 F. Supp. 2d 1196, 1222 (D.N.M. 2013) (Browning, J.). *See also Becker v. Ute Tribe of the Uintah and Ouray Reservation*, 770 F.3d 944, 947 (10th Cir. 2014) ("Indeed, '[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.'") (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Ordinarily, defendants seeking to remove an action to federal court must rely either on the district courts' jurisdiction over cases involving a complete diversity of citizenship or over suits arising under the laws of the United States. *See* 28 U.S.C.

§§ 1331, 1332. The Defendants here, however, rely on an "exceedingly narrow" and relatively arcane "branch of federal question jurisdiction" known as "substantial question" jurisdiction that has been applied only to a "special and small category of cases." *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012) (internal quotation marks omitted). In such cases, "even though a plaintiff asserts only claims under state law, federal-question jurisdiction may be appropriate if the state-law claims implicate significant federal issues." *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (*en banc*). Importantly, however, "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005). In determining whether a civil action poses a "substantial question" of federal law, the party invoking the jurisdiction of a United States district court must show that "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065. The Court will evaluate each of New Mexico's claims in turn.

## II.  Fraud Against Taxpayers Act

New Mexico's Fraud Against Taxpayers Act, N.M.S.A. §§ 44-9-1, *et seq.*, prohibits, as is relevant here, the knowing presentation of "a false or fraudulent claim for payment or approval" to an organ of the state. N.M.S.A. §§ 44-9-3(A).

Careful examination of the claims brought under this statute reveals that they do not present a federal question as contemplated by *Grable* and its progeny.

First, it is not necessary to resolve any disputed issue of federal law for New Mexico to recover under this count. *See Randolph v. Forsee*, No. 10–2445–JAR–JPO, 2010 WL 5148293, at *5 (D. Kan. Dec. 13, 2010) ("in order for there to be a disputed federal issue, the Court must be required to resolve the federal issue in order for plaintiff to recover."); *Nassau Cty. Bridge Auth. v. Olsen*, -- F. Supp. 3d --, 2015 WL 5474354, at *4 (E.D.N.Y. Sept. 19, 2015) ("An issue is necessarily raised if the plaintiff cannot prevail on its state law claim without reference to federal law or regulations."). The Attorney General alleges that the claims submitted to the state were "false" because Defendants knew ***either*** that: (1) the services provided "failed to comply with State and federal laws and regulations material to payment requiring that skilled nursing facilities meet, and have sufficient nursing staff to meet, their residents' needs" ***or*** (2) the services "were not rendered, not rendered as claimed, or were so deficient, inadequate, and/or substandard as to be worthless." Doc. 1-3 ¶ 224. The Court understands these to constitute potentially independent and sufficient conditions for liability under the Fraud Against Taxpayers Act, as each alternative would render a claim "false" for the purposes of the statute.

Critically, Defendants misapprehend these allegations, arguing that "the Attorney General's case here hinges on whether the Defendants acted unlawfully with regard to allegations of inadequate staffing and care" that implicate federal law because in order to "determine whether Defendants fell short of the standards

5

set by applicable law, those standards must be examined," which include federal statutes and regulations. Doc. 73 at 10. Further, Defendants reason, because "the Attorney General attempts to establish liability for fraud under" Counts I and II of the Amended Complaint "by pointing to the certification of compliance on the [Minimum Data Set] forms," the state "would have to prove that the certification is a condition of payment rather than merely one of participation," which, in turn, "depends on interpretations of federal law." *Id.* at 11.

Defendants' position cannot withstand significant scrutiny. As an initial matter, as Defendants concede, New Mexico, in an exercise of its sovereign authority, has enacted statutes and regulations governing the standard of care provided at nursing homes that generally parallel federal law. *See, e.g.*, *id.* at 6 ("New Mexico law echoes the federal regulations with regard to the requisite quality of care to be provided."). Consequently, Plaintiff can prove that "Defendants fell short of the standards set by applicable law" by referring solely to New Mexico substantive law. *See, e.g.*, N.M.A.C. § 7.9.2 (establishing the "requirements for long term care facilities"). Similarly, although the MDS is demanded by federal regulation, Defendants have not articulated why the question of whether certification is a condition of payment, participation, or both, is federal in nature.

Moreover, Plaintiff can prevail on the claims under this count by demonstrating that the services Defendants claimed to have rendered were complete fabrications, rather than deficiently executed; certainly, such a claim on the New Mexico treasury would be "false" in any conceivable meaning of the word

6

and such an argument need not refer to the MDS at all.  The fact that relief is potentially available to the Attorney General without the construction of, or reference to, federal law is fatal to "substantial question" jurisdiction under *Grable*. *See Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 675 (9th Cir. 2012) ("When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim.") (internal quotation marks omitted).  *See also Pennsylvania v. Tap Pharmaceutical Products, Inc.,* 415 F. Supp. 2d 516, (E.D. Pa. 2005) (remanding under *Grable* where "liability may proceed on entirely non-federal grounds."); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) (remand is demanded where "a federal issue is present as only one of multiple theories that could support a particular claim.").

  This conclusion finds ample support in the cases of other districts.  For example, in *Alaska v. Merck & Co., Inc.,* the District of Alaska confronted a motion to remand in a Medicaid fraud case pursued under state law.  *See Alaska v. Merck & Co., Inc.*, No. 3:06–cv–00018–TMB, 2015 WL 507011, at *1 (D. Alaska Feb. 6, 2015).  The gravamen of Alaska's complaint was that "Merck's misrepresentations regarding the safety of Vioxx induced the State of Alaska to authorize expenditures of Medicaid funds for the purchase of Vioxx ... result[ing] in the expenditure of millions of dollars of state funds or state controlled funds on Vioxx." *Id.* at *3 (internal quotation marks omitted).  In explaining why this claim did not "implicate[] significant federal issues" the court reasoned that the state's complaint

did not contest the meaning of the Medicaid statute or any other federal regulation, but rather contended "that [Alaska] was fraudulently induced to cover Vioxx and this, in turn, triggered the State's obligation to reimburse payments spent on Vioxx prescriptions." *Id.*

So it is here.  New Mexico alleges, in part, that "Defendants submitted claims for services that they knew were not rendered."  Doc. 1-3 ¶¶ 225.  Under such a theory, no interpretation of the Medicaid statute is necessary; it is patently fraudulent to claim reimbursement for expenses never incurred.  *See Utah v. Eli Lilly & Co.,* 509 F. Supp. 2d 1016, 1022 (D. Utah 2007) (explaining that Utah's Medicaid fraud suit had "had multiple bases" in both state and federal law, such that "resolution of this claim does not hinge solely on a federal question.").  *See also, e.g., In re Oxycontin Antitrust Litig.*, 821 F. Supp. 2d 591, 596 (S.D.N.Y. 2011) ("Notably, the **vast majority** of federal district courts that have considered this question—in analogous cases brought by attorneys general against pharmaceutical companies for reimbursement of Medicaid-related expenses—have found that they lacked federal question jurisdiction under *Grable* and **have remanded** the actions to state court.") (emphasis added).

Second, any federal issues in this case are not substantial.  Despite Defendants' suggestion to the contrary, the Supreme Court has made manifest that, for the purposes of *Grable*, an issue is "substantial" if, and only if, the question of law is important "to the federal system as a whole."  *Gunn*, 133 S. Ct. at 1066.  Any legal issues resolved in this case are likely to be fact-bound and case-specific, such

8

that resolution of any lurking federal questions would not be "controlling in numerous other case." *Empire*, 547 U.S. at 700.

Third, whereas *Grable* stemmed from the administrative action of a federal agency, this case is an enforcement suit by a state attorney general, such that principles of comity militate against permitting removal of this case to a federal forum. *See Franchise Tax Bd. of the State of Cal. v. Constr. Laborers for S. Cal.*, 463 U.S. 1, 21 n. 22 (1983) ("considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it."). In remanding a Medicaid fraud claim brought pursuant to Pennsylvania law, the Eastern District of Pennsylvania elaborated on this axiom and explained that there "is no meaningful indication that Congress intended to confer federal jurisdiction over state law causes of actions" for Medicaid fraud and that this "absence of a federal cause of action" should be read as "'tantamount to a Congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal question jurisdiction.'" *Pennsylvania v. Eli Lilly & Co., Inc.*, 511 F. Supp. 2d 576, 585-86 (E.D. Pa. 2007) (quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 814 (1986). "Likewise," the court continued, as part of the Medicaid program, states are required to "'take all reasonable measures to ascertain the legal liability of third parties'"" and, "if 'legal liability is found to exist,' the state must seek reimbursement" but, because no federal cause of action exists, it "must do so using state law based theories." *Pennsylvania v. Eli Lilly*, 511 F. Supp. 2d at 586

9

(quoting 42 U.S.C. § 1396a(a)(25)). Thus, removal of this case, and those like it, would risk upsetting the "cooperative federalism" envisioned by the Medicaid program. *See Nat'l Fed'n of Independent Bus. v. Sebelius*, 132 S. Ct. 2566, 2632 (2012) (internal quotation marks omitted).

Fourth and finally, unlike *Grable*, this case presents numerous factual disputes that must be resolved along with any issues of law. As the Supreme Court explained in *Empire*, such a "fact-bound and situation-specific" case is "poles apart from *Grable*," which "presented a nearly pure issue of law." *Empire*, 547 U.S. at 700-01 (internal quotation marks omitted). For each of these four reasons, the claims under this count do not qualify this case for federal jurisdiction under *Grable*.

### III. Medicaid Fraud Act

New Mexico's Medicaid Fraud Act prohibits, in pertinent part, "providing with intent that a claim be relied upon for the expenditure of public money: treatment that is substantially inadequate when compared to generally recognized standards within the discipline or industry" and "presenting or causing to be presented for allowance or payment with intent that a claim be relied upon for the expenditure of public money any false, fraudulent, excessive, multiple or incomplete claim for furnishing treatment, services or goods." N.M.S.A § 30-44-7. For reasons substantially identical to those discussed above, Plaintiff's claims under this count do not present a substantial federal question.

First, Plaintiff's allegations do not necessarily raise any genuinely disputed issue of federal law.  As with the claims brought under the state Fraud Against Taxpayers Act analyzed above, New Mexico may recover under the Medicaid Fraud Act by relying entirely on state law; the text of the statute makes apparent that one avenue of proving liability is to show that Defendants sought reimbursement for treatment that was "substantially inadequate when compared to generally recognized standards within" the profession.  Questions regarding the relevant standard of care are generally issues of fact, not law, and therefore do not raise a federal question.  *See, e.g.*, *Blaukamp v. Univ. of N.M. Hospital*, 836 P.2d 1249, 1254 (N.M. Ct. App. 1992) ("The issue of whether a physician has acted negligently is generally a question of fact for the jury.").  Moreover, even if such disputes did pose questions of law, it is obvious, even from Defendants' Response, that New Mexico has enacted parallel, but independent, statutes and regulations regarding the standard of care to which Plaintiff may refer.  *See* Doc. 73 at 10-11.

Similarly, Plaintiff could recover by demonstrating that Defendants submitted to the state "any false, fraudulent, excessive, multiple or incomplete claim for furnishing treatment, services or goods."  N.M.S.A. § 30-44-7(4).  Analysis of this provision effectively mirrors the discussion offered above.  It is sufficient, therefore, to note, by way of example, that New Mexico can prevail on these claims by relying on the purely factual showing that Defendants sought recompense for services that they allegedly never provided or otherwise factually misrepresented the services or treatment rendered.

Second, as with the claims brought under the Fraud Against Taxpayers Act, any federal issue nested in the recesses of this case is insubstantial. Even if, for example, Plaintiff were to employ a federal statute to establish the governing standard of care, such a limited use would likely not demand any significant construction of the statue and would necessarily be heavily tied to the particular facts at issue here. For these reasons, courts frequently decline to find substantial question jurisdiction predicated solely on an imported federal standard of care. *See, e.g.*, *Navistar Intern. Corp. v. Deloitte & Touche LLP*, 837 F. Supp. 2d 926, 930 (N.D. Ill. 2011) (invocation of "federal standards does not, by itself, give rise to Grable jurisdiction"); *Pennsylvania v. Eli Lilly*, 511 F. Supp. 2d at 584-85 ("The mere presence of a federal standard embedded in a state law cause of action is not sufficient to warrant federal subject matter jurisdiction where there is no federal remedy for a violation of the federal statute."). Indeed, the Supreme Court in *Grable* itself noted that "if the federal ... standard [under the FCPA] without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action." *Grable*, 545 U.S. at 318. This Court will not extend federal subject matter jurisdiction in the face of such clear precedent to the contrary.

Finally, the same federalism concerns that the Court discussed above still militate in favor of remand here. This Court is acutely aware of its limited jurisdiction and is especially chary of injecting itself into an enforcement action brought by a state attorney general.

## IV. Unfair Practices Act

New Mexico defines as an "unfair or deceptive trade practice" any "false or misleading oral or written statement" that is "made in connection with the … sale, lease, rental or loan of goods or services" that "may, tends to or does deceive or mislead any person." N.M.S.A. § 57-12-2(D). Similarly, the state classifies as "unconscionable" any "trade practice" that "takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree." N.M.S.A. § 57-12-2(E)(1).

Even a cursory reading of the statute makes patent that claims brought for "unfair or deceptive trade practice[s]" are creatures entirely of state law that do not implicate *Grable*. Succinctly stated, in order to prove that the Defendants employed "false or misleading" statements in the course of operating the nursing facilities, Plaintiffs can rely on, for example, the factual disparity between the services that Defendants claimed to have rendered and those that they actually performed. *See* Doc. 1-3 ¶¶ 234. Such a theory of recovery plainly does not implicate federal law and therefore cannot qualify for federal subject matter jurisdiction under *Grable*.

## V. New Mexico Common Law Claims

As the Amended Complaint makes clear, any claims for breach of contract arise out of purported violations of covenants that Defendants made to the state, including to provide Medicaid services "in accordance with all applicable state and federal laws and regulations, and the regulations and standards of the New Mexico Medicaid Program." Doc. 1-3 ¶ 241. Similarly, New Mexico contends that the

Defendants, other than Sagecrest Nursing and Rehabilitation Center, were unjustly enriched, directly or indirectly, by "submit[ting] billings to the New Mexico Medicaid program for care not rendered or for care rendered in a manner that was substantially inadequate when compared to generally recognized and legally mandated standards within the discipline or industry." Id. ¶¶ 245-47.

The Court will not retrace its careful steps through the earlier discussion. Rather, it is sufficient here to underscore both that New Mexico may recover on the claims in these counts without reliance on *any* federal law and that any incidental reference to a federal standard would not create a substantial issue of federal law implicating *Grable*.

## VI.   Attorneys' Fees and Costs

Although the Court finds that there is no federal subject matter jurisdiction in this case, it does not believe that an award of attorneys' fees and costs is appropriate. The statute broadly authorizes an award of "just costs and any actual expenses, including attorney fees, incurred as a result of the removal" where a district court finds that remand is warranted. 28 U.S.C. § 1447(c). However, the Supreme Court has held that although the text of the statute is permissive, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Given the serious and considered analysis required to resolve the dispute in the instant case

and the competently-argued briefing on both sides, it is apparent that Defendants' removal rested on an objectively reasonable, if ultimately incorrect, basis and, therefore, no award of fees or costs is warranted.

## CONCLUSION

For the foregoing reasons, the Court finds that this civil action does not present a "substantial question" of federal law and therefore was improvidently removed to this Court. Consequently, the Court will order that the entire suit be remanded to the First Judicial District Court, County of Santa Fe. However, although removal was not justified in this case, the Court finds that Defendants had an objectively reasonable basis to believe that federal question jurisdiction exists in this case and, therefore, the Court will not award attorneys' fees or costs.

**IT IS THEREFORE ORDERED** that Plaintiff State of New Mexico's Motion to Remand and for Costs and Memorandum in Support [Doc. 60] is **GRANTED IN PART**.

Dated this 2nd day of October, 2015.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE


**Patricia Tucker,** *et al.*,
Assistant N.M. Attorney General
*Attorneys for the Plaintiff*

**David D. Douglass,** *et al.*,
Sheppard Mullin Richter & Hampton LLP
*Attorneys for the Defendants*